Judgment reversed, and <em>venire de novo</em> awarded.

## The Western Pennsylvania Railroad Company *versus* Hill.

1. In a question of damages for the construction of a railroad, evidence was proper that the construction of the road tended to decrease the business of a mill, by making it unsafe to drive horses near it, and dangerous and inconvenient for persons going to and from it.

2. The court charged that such damage was not consequential and prospective, but immediate and direct. *Held*, that the instruction was proper.

3. When the deterioration of property from the construction of a railroad results from actual and not speculative causes, which to all human appearance promised to continue, there is a ground for damages.

4. The court, in answer to a point that the jury should be instructed to specify the damage, charged that they ought to consider each item separately, and the sum total would be their verdict, and their verdict might be returned with or without the specification of the items. *Held* not to be error.

January 8th 1868, at Philadelphia. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. STRONG, J., at Nisi Prius.

Error to the Court of Common Pleas of *Somerset county :* No. 64, to May Term 1866. Middle District.

This case commenced November 24th 1863, in a proceeding on the application of The Western Pennsylvania Railroad Company for viewers to assess damages done by the construction, &c., of their road through the lands of Daniel Hill and Hiram Hill. Viewers were appointed who assessed the damages to the Hills at $2700. The company appealed, and by agreement " the case was put on the trial list without further pleadings, David H. Hill to take the affirmative of the issue." The case was tried with the company as plaintiffs and the Hills as defendants. February 21st

[Western Pennsylvania Railroad Co. *v.* Hill.]

1865, on their application, the case was transferred to the Court of Common Pleas of Somerset county.

The property to which the principal injury was alleged to have been done was a mill. Damages were claimed for covering up a spring, destruction of apple-trees and of a small building and for the loss of custom to the mill by reason of the danger to be apprehended to horses, &c., and inconvenience and delay of persons going to and from the mill: the last was the item for which damages were principally claimed.

The mill was on the left bank of the Kiskiminetas river, the township road to the mill was cut out of the bank and ended at the mill, and customers had to turn and go back. The railroad runs side by side with the township road for about 800 feet, is raised above it and passes the mill at the distance of 30 feet from it. There is no room for another road between the present township road and the river.

On the trial before King, P. J., the claimants offered the deposition of William Storps. The company objected to the following part of the deposition:—

" In my judgment, it is not safe to drive horses between the railroad and the mill; it would not be safe to leave horses between the railroad and the mill; there are trains on the road running frequently through the day, so as to make it unsafe at any time through the day to go to the mill." * * " I have quit the mill since the railroad opened; I have quit it because I was afraid to go to the mill." * * " Before the opening of the railroad, the mill property was worth over $8000; the mill property, in my estimation, has decreased in value at least one-half by the railroad."

A number of other depositions were offered, and those parts of them containing similar testimony were objected to by the company. All were received, and several bills of exceptions sealed.

The claimants gave evidence also of damages in the other particulars mentioned in the statement of the case.

The company submitted the following points:—

2. The claim for damages for the inconvenience in going to and from the mill, in consequence of the delay from passing trains, and the danger attendant upon it, cannot be allowed in this case as an element of damages, for which there can be a recovery by the defendants.

3. The jury cannot allow damages for the supposed or temporary loss of custom, by reason of the danger to be apprehended to teams, horses, &c., going to and from the mill.

4. The defendants are not entitled to recover for any supposed damages, by reason of the destruction of the race, as there was no overshot erected at the time of its occupation, and the company are only liable to pay for the works as they found them.

[Western Pennsylvania Railroad Co. *v.* Hill.]

5. If the jury find in favor of the defendants, they must specify in their verdict the items or subjects for which they allow the damages, or the principle upon which it is reached, stating the sum for each item and then adding the same together, return one general sum stating the items, with the addition.

The judge charged:—

*   *   *   "The counsel for the plaintiffs deny that the mill-race is an element of damages to be considered by the jury, unless they believe it was in use, or had not been abandoned at the time the land was appropriated by the company. There is evidence that the race had been used to conduct water to an overshot, attached to the old mill, and was of considerable value in times of high water. No overshot was constructed for the new mill, which was about being finished, when the graduation of the road commenced; but the race was still there, and it is argued that the overshot could have been constructed and attached to the new mill, if the race had not been interfered with. . Was this race, in the condition it was found at the time the company began the grading of the road, of any value to the property of the defendants? If so, we say to you, it will be your duty to ascertain its value and add the amount to the damages.

"This brings us to the question of the loss of custom to the mill, caused by the hazard of taking horses and teams there, while trains of cars were passing over the road in such close proximity to the mill.

"It is conceded that if the road to the mill had been so blocked up by the embankment of the railroad, as to keep customers away altogether, the jury would be warranted in regarding such obstructions as a proper ground for damages. If the entire exclusion of customers from the mill could be so considered, we can perceive no good reason why a partial exclusion may not also be taken into the account; [whatever may be the loss thus . produced, must manifestly, to the extent of such loss, affect the market value of the property, and should be estimated by the jury. Such damage is not consequential and prospective, but is immediate and direct]."

In answer to the points, he said:—

"2. If the jury believe that the construction of the plaintiffs' road had the effect of driving away a part of the customers of the mill, it would affect the market value of the property, and they ought to find such damages as the injury complained of has produced.

"3. Whilst the law stated in this point may be true as a general proposition, it is not applicable to the facts of this case, if the jury believe the mill was deprived of a portion of its business, on account of the fears of the customers to go to the mill with their horses and teams; and that there was reasonable

[Western Pennsylvania Railroad Co. v. Hill.]

ground for such fears, this would be an immediate and direct attack on the market value of the mill, as a mill property. No mill can get along without customers, unless it is built and constructed in a way to be used and carried on as a merchant mill.

" 4. We have already answered this point in the general charge.

" 5. When you come to ascertain what damages the defendants have sustained, you ought to take each item into consideration separately, and settle the amount of damages or compensation for each, and then add the whole together, the sum total of which will be your verdict; you may, however, return a verdict for the whole sum, either with or without the details, as you think proper."

The verdict was for the claimants for $4000.

The railroad company took a writ of error, and assigned for error the admission of the evidence objected to—the answers to the points and the part of the charge in brackets.

*H. C. Marchand, W. H. Koontz,* and *Stewart & Clark,* for plaintiffs in error, referred to Searle *v.* Lackawanna Railroad, 9 Casey 57; East Penna. Railroad *v.* Hottenstine, 11 Wright 28; Monongahela Navigation Co. *v.* Coons, 6 W. & S. 112; Henry *v.* Pittsburg and Allegheny Bridge Co., 8 Id. 86; Watson *v.* Pittsburg and Connellsville Railroad, 1 Wright 479; Miflin *v.* Railroad, 4 Harris 190; New York & Erie Railroad *v.* Young, 9 Casey 180; Patten *v.* N. Centr. Railroad, Id. 435; Act of February 19th 1849, § 13, Pamph. L. 84, Purd. 840, pl. 18; Hornstein *v.* Atlantic and G. W. Railroad, 1 P. F. Smith 87.

*Golden, Foster* and *Patterson,* for defendants in error, cited Boston and Pr. Railway *v.* Midland Railway, 1 Gray 360; Drake *v.* Hudson River Railroad, 7 Barb. 552; Redfield on Railways 136, 143–5, 178–9; Sch. Nav. Co. *v.* Thoburn, 7 S. & R. 411; Railroad *v.* Yeiser, 8 Barr 366; Watson *v.* P. & L. Railroad; E. Penna. Railroad *v.* Hottenstein; Hornstein *v.* Atlantic and G. W. Railroad; Miflin *v.* Railroad; Patterson *v.* N. Centr. Railroad; Searle *v.* Lackawanna Railroad; Mon. Nav. Co. *v.* Coons, *supra;* E. Penna. Railroad *v.* Hiester, 4 Wright 53; Harvey *v.* Lack. and B. Railroad, 11 Id. 434; 1 Greenl. Ev. § 440; Lehigh Bridge *v.* Lehigh Nav. Co., 4 Rawle 23; Sch. Nav. Co. *v.* Loose, 7 Harris 16; Glover *v.* N. Staffords. Railway, 5 Eng. L. & Eq. 335; Concord Railway *v.* Greeley, 3 Foster 237; In re Cooling, 19 L. J. Q. B. 25; Lehigh Val. Railroad *v.* Trone, 4 Casey 206; Barclay *v.* Ingham, 12 Id. 194; Dorlan *v.* E. Brandywine Railroad, 10 Wright 520; Sunbury and Erie Railroad *v.* Hummel, 3 Casey 105; Tucker *v.* E. & N. E. Railroad, Id. 281.

[Western Pennsylvania Railroad Co. *v.* Hill.]

The opinion of the court was delivered, January 26th 1868, by

THOMPSON, C. J.—The court admitted evidence and submitted it as a ground of recovery in favor of the plaintiff below, whether the direct and immediate effect of the construction and use of the company's railroad over the plaintiffs' land, had the effect to destroy the business of their mill, and consequently to lessen its value. The testimony is full to this point, and leaves no doubt of the fact. If the taking of the plaintiffs' land directly resulted in this, in a way capable of being certainly ascertained, it is not easy to see why compensation should not result from one cause of injury as well as another. This I suppose would not be disputed as a general proposition; but it is denied that the occurrence of the injury in this particular case is a ground of damage.

What is it? Many witnesses testified that the plaintiffs owned an ancient custom mill; that after the railroad was built and begun to be operated, they ceased to carry their grain to be ground there, and that at least one-half of their custom had fallen off. The reason given for this was simply the danger in going to the mill with horses and teams, owing to the location of the railroad with reference to the mill.

The mill stands on a narrow strip of land, between the Kiskeminetas river, on the one side, and a high bluff or hill on the other. A township road starts at the mill, and after running along the narrow strip for some 15 or 20 rods, leaves the valley and passes into the open country. Side by side, with this township road is the railroad, elevated a few feet above it, and so passes the mill at a distance of some thirty feet from its door. There is no room for another road, it appears, between the township road and the river, and along this road teams and horses must pass to and from the mill; a precipitous bank and the river being on the one side, and the railroad on the other. In the opinion of the witnesses this presented a case of such peril and inconvenience in frightening teams and horses, as to compel them and others to carry their grain to be ground at other mills. If this resulted as an immediate and direct consequence of the taking of the plaintiffs' property, on which to build the railroad, and if the fear and danger in the circumstances of the case were reasonable, and prevented people from coming to the mill, the court advised the jury that the depreciation in the value of the property, therefore, ought to be compensated by the railroad company.

This view, in its application to the admission of testimony and to the charge of the learned judge, forms the principal assignments of error in the case.

I regard the testimony as but a mode of ascertaining a measure of damage, sanctioned by the court from Thoburn's Case, 7 S. & R. 411, down to Hornstein's Case, 1 P. F. Smith 87, namely, the difference between the value of the property after the con-

struction of the railroad and before ; the amount of deterioration, when ascertained by proper tests, being the amount the owner should be entitled to. This must almost always be arrived at through a variety of details in evidence, to enable the jury to find a result. When the deterioration results from actual and not speculative causes, and, to all human appearance, from causes which promise to continue, then it must be admitted as a ground of damage.

At common law, depreciation of property by agencies that would destroy its value, would undoubtedly be a ground for the recovery of damages. The maxim *sic utere tuo ut alienum non lædas*, embodies the duty, and the law must enforce it, or the maxim would be idle. In 3 Casey 99, repeated in 1 Wright 469, and other cases, it was held " that the construction which has been given to legislative charters for improvement companies generally, has been, that they are intended to secure compensation for such injuries as the common law recognises as fit objects for compensation." In this last case, a practical application of the rule is given, and it goes far to justify the ruling of the learned judge in this case. In the opinion of the court, my brother Strong said : " The exclusive appropriation of a part, the inconvenience arising from divisions or from increased difficulty of access, and the cost of additional necessary fencing, are alike the direct and immediate results of the construction of the railroad," and entitled to be compensated. See also Patten *v.* The Northern Central Railroad Co., 9 Casey 426. These cases would compensate the *inconvenience* to a landowner, whose property is taken to build a railroad. The direct and immediate result of the construction of a road over land taken, if injurious, gives title to damages—even to the extent of estimated inconveniences.

The rule in its breadth, applies generally, only to cases where there is an exclusive taking of a portion of the owner's property under the right of eminent domain. This is apparent from the Monongahela Nav. Co. *v.* Coons, 6 W. & S. 101, and subsequent cases.

It is not necessary to elaborate much the nature of the injury here, or its direct character. It results solely from the taking a portion of the plaintiff's land, and the construction and use of the defendants' road. I see not much difference in the nature and certainty of the exclusion of the customers of this mill, between an absolute physical obstruction, directly in their way, and others which continually threaten their lives and limbs in the use of the ordinary means of getting there. Without enlarging, however, we think the testimony in regard to the loss of custom to the mill, from the construction of the road over the ground of the owner, and the reason for it, were properly received and properly sub-

6 P. F. Smith—30

[Western Pennsylvania Railroad Co. *v.* Hill.]

mitted to the jury as grounds of compensation to be made to the plaintiffs, for the deterioration of their property.

It was not error to refuse to instruct the jury that they must state in detail the items which should constitute their verdict. It was not even necessary, under a similar provision, in case of appraisers of damages : Tucker *et al. v.* The Erie and N. E. Railroad Co., 3 Casey 281. Nor was the contrary decided in the case of Patten *v.* The Northern Central Railroad Co., *supra.* That was not a point in that case. A jury might, if they chose, state the items composing the sum of their verdict, but it would amount to nothing. They must find an aggregate sum, no matter of how many items it is composed. We have carefully considered all the assignments of error in the case, and seeing nothing to correct,

The judgment is affirmed.